**SOUTHERN SHELL FISH CO.,**
**Inc. et al. v. PLAISANCE.**
No. 13689.

United States Court of Appeals,
Fifth Circuit.
April 29, 1952.

Alfred C. Kammer, New Orleans, La., for appellants.

James I. McCain, New Orleans, La., for appellee.

Before HOLMES, BORAH and STRUM, Circuit Judges.

STRUM, Circuit Judge.

In an action under section 33 of the Merchant Marine Act, 46 U.S.C.A. § 688, plaintiff below recovered judgment against Southern Shell Fish Company, and its liability insurer American Mutual Liability Insurance Company, for personal injuries received by plaintiff while working aboard a fishing boat owned by the Shell Fish Company. Defendants appeal.

Plaintiff alleged that he was employed as a member of the crew by the Shell Fish Company, acting through the captain of said boat; and that he was injured as a result of the company's negligent failure to use due care to provide him a reasonably safe place in which to work. The principal defense was that although the vessel was owned by the Shell Fish Company when

plaintiff was injured, it was operated and controlled by Captain Frank Plaisance, father of the plaintiff, to whom the vessel had been leased by the company, as an independent operator thereof, and if there was any liability it was upon said independent lessee, not the company.

The Shell Fish Company operated a shrimp and oyster cannery. It owned a fleet of fishing boats, of which the boat in question was one, which were operated by fishermen who acted as "captains." There was no formal lease or charter of the boats. The captains were simply engaged to operate them on the basis hereafter stated. The company had the unqualified authority to peremptorily terminate a captain's services at any time, an authority frequently exercised. Usually the boats were engaged in catching shrimp, but sometimes the operators bought shrimp from other fishing craft and transported them to the cannery, an operation called "freighting." Upon direction of the company, the boats also sometimes engaged in oyster fishing.

The boats were operated on a "five share" basis, two shares to the company, three shares to the captain, who divided the latter amongst himself and the crew as the captain determined, without supervision by the company.

The captain hired and fired the members of his crew, and directed their work, the company exercising no direct control thereover. Usually the captain determined when and where he would fish, but the company, according to its needs, directed the captain whether to fish or "freight" shrimp, or whether to fish for oysters. It was required, however, that the captain deliver his entire catch, or purchases, to the defendant Shell Fish Company unless he had the company's express permission to dispose of them to others, which was unusual. On these occasions when a cargo, or some of it, was thus sold to others, the captain brought the entire proceeds to the company's office, to be divided as already stated. The company also controlled the time when the vessel would be in operation, and when it should be laid up for repairs.

The company did not carry the captain on a regular payroll, nor did it withhold any income taxes or make any deductions for social security or unemployment insurance. The company made advances to or for the captains for the purchase of fuel, ice, groceries, etc., to be used on each trip. Similar advances were made to the operators of other "independent" boats not owned by the company, and these advances were deducted before determining the amount due to the captain for each catch. If the catch on any given trip was insufficient to cover such advances, the deficit was carried over to, and deducted from, the next trip made by that boat, the captain being responsible therefor. A company witness testified that the company did not become the owner of the catch until it had been weighed, graded, and paid for. Until then, the catch was regarded as the property of the captain.

In Osland v. Star Fish & Oyster Company, 5 Cir., 107 F.2d 113, a case quite similar to this, when considering a demurrer to the complaint, this court held in effect that operating a fishing boat, such as this, on a share basis, is not inconsistent with an employer-employee relationship. That case was thereafter tried on the merits, the jury finding for the defendant apparently upon the theory that the plaintiff in that case was not employed by the defendant company. The jury thus resolved the facts before it in that case, and the judgment entered on that verdict was affirmed by this court, 118 F.2d 772, upon the theory that those facts would support such a verdict. In doing so, however, this court did not alter its earlier holding that the circumstances here shown are also consistent with the existence of an employer-employee relationship. This court has frequently held that where the evidence is conflicting, or permits of conflicting inferences, and the case has been fully and fairly presented to a jury, the verdict will not be disturbed on appeal. Roundtree v. Post, 5 Cir., 134 F.2d 340, 341; American Employers' Insurance Co. v. McLean, 5 Cir., 127 F.2d 275.

Whether this plaintiff is an employee of the Shell Fish Company, or of the vessel's captain as an independent lessee of the vessel, is a question of fact for the jury where, as here, there are circum-

stances which might tend to support either theory. Of course, plaintiff can not recover against the Shell Fish Company under the Merchant Marine Act unless he was the the latter's employee. Loe v. Goldstein, 9 Cir., 101 F.2d 967.

■ Here, the jury concluded that plaintiff was an employee of the Shell Fish Company, and as such entitled to recover against the company. The evidence is susceptible of that conclusion, and that the shares or lay awarded the captain and crew were merely a method of paying them for their services according to results accomplished, rather than on a daily or weekly basis. Loe v. Goldstein, 9 Cir., 101 F.2d 967; Nolan v. General Sea Foods Corp., 1 Cir., 112 F.2d 515; Maryland Casualty Co. v. Grant, 39 Ga.App. 285, 146 S.E. 792; Osland v. Star Fish & Oyster Co., 5 Cir., 107 F.2d 113. Moreover, contrary to the situation in the Osland case, plaintiff was injured, not as a result of any act of commission or omission on the part of the captain or another crew member, but as the result of an inherent defect in the boat itself. Plaintiff was injured while operating a winch which controlled a heavy cable used for pulling in the shrimp net at the stern of the boat. This cable ran through a "block" attached to a heavy eye bolt fastened to a forward hatch. There was a heavy strain on the cable and eye bolt. The eye bolt broke, causing the cable to whip back against plaintiff, throwing him into the revolving winch.

There is another circumstance here, not present in the Osland case, which the jury may have found persuasive in determining whether or not plaintiff was an employee of the Shell Fish Company. Previous to plaintiff's injury on October 9, 1949, the defendant insurance company issued to the Shell Fish Company a liability policy, which was in force when plaintiff was injured. The policy is entitled "Standard Workmen's Compensation and Employers' Liability Policy." As originally printed, the policy agreed to indemnify the insured "employer" against liability imposed upon it by law for damages on account of personal injuries to "employees" legally employed. At the time of issuance, however, on July 31, 1949, this language was amended by endorsement to read that the insurer agreed "to indemnify this 'employer' against loss by reason of the liability imposed by law for damages on account of injuries to legally 'employed' persons arising out of the ownership, maintenance, or use of the vessels described in the schedule" attached to said policy, one of which was the vessel on which plaintiff was injured. This amendment further provided: "It is agreed that the captains and members of the crew of vessels described in the schedule shall be considered as independent contractors and not legally employed persons * * *; provided, however, that in the event that the captains or members of the crews of these vessels are held to be employees of said employer, this policy shall cover the liability of this employer to such captains or members of the crews." Thus, it appears that the defendants had in mind the possibility that the crews of these vessels might be held to be employees of the Shell Fish Company.

On July 31, 1949, one month after issuance of the policy, the last quoted provision was amended to read: "Members of the crew are persons who are not in the employ of the insured but are aboard these fishing vessels and receive part of the catch as their salary or remuneration. The captains and members of the crew of these fishing vessels are covered under this policy." This provision was in effect when plaintiff was injured on October 9, 1949.

This presents a rather equivocal situation. The policy says that the crews of these vessels are not employees of the Shell Fish Company, yet liability to them is expressly covered by the policy, which refers to the company as the "employer." It may be that in the evolution of this policy the jury found corroboration of other circumstances tending to establish plaintiff's claim that he was in fact an employee of the Shell Fish Company.

■ Defendants also denied that the Shell Fish Company was guilty of negligence and charged that plaintiff was guilty of contributory negligence. In returning a verdict for plaintiff, the jury evidently found to the contrary. The evidence supports such conclusions. Loe v. Goldstein, supra; Nolan v. General Sea Foods, supra.

■ Nor do we find reversible error in the refusal of the trial court to permit another fishing boat captain to testify as to his arrangements with the company, and how he operated his boat. The testimony is clearly irrelevant.

Affirmed.