See, also, 21 F.R.D. 316.

**Julio DINIERO, Plaintiff,**

v.

**UNITED STATES LINES COMPANY, Defendant.**

United States District Court
S. D. New York.
June 27, 1960.

Lee Pressman, New York City, for plaintiff; by Standard, Weisberg, Harolds & Malament, New York City, Edward J. Malament, and Jack Weinberger, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for defendant; Joseph M. Cunningham, New York City, and Joseph Ritorto, Brooklyn, N. Y., of counsel.

MURPHY, District Judge.

Plaintiff's claim for maintenance and cure, by agreement of counsel, was reserved to the Court.

The plaintiff's principal claim, which resulted in a jury verdict in the sum of $46,150, was that he was injured aboard defendant's ship, the Pioneer Land, as a result of a defective valve attached to the makeup evaporator. No claim was made of a sudden or unexpected trauma, but rather of a continuous back strain occasioned by the defective valve and the position he had to assume when operating it.

Plaintiff was removed from the ship at Honolulu on September 30, 1954, and given treatment at the Tripler Army Hospital from that date to November 5, 1954. After repatriation to this country he was given out-patient treatment at the Hudson & Jay Clinic of the Public Health Service Hospital in New York from November 8, 1954 to December 22, 1954, and was marked fit for duty on that latter date.

Still complaining of pain, he was treated as an out-patient in the United States Public Health Service Hospital on Staten Island starting December 23, 1954, and was discharged and marked fit for duty on April 4, 1955.

The diagnosis made at both of these hospitals was lumbosacral strain, chronic.

During his out-patient treatment for this period of time from November 8, 1954 to April 4, 1955, he was paid his maintenance by defendant and no further claim for that period is before us.

The problem that arises relates to the intervening period between April 4, 1955 and the time of the trial. Although he was marked fit for duty on April 4, 1955, he testified that he continued to have pain in his back and this pain prevented him from pursuing his usual occupation, and, as will appear later, that during that time he was only on rare occasions capable of working as a night relief engineer. (Since 1944 to the time plaintiff left the ship in Honolulu in 1954, he had worked and sailed only as a licensed engineer.)

Some three or four months later he tried to be admitted to the Marine Hospital but he was refused because of a rule that a seaman must have worked within a period of 90 days prior to seeking treatment. He, nevertheless, took

treatment from a chiropractor, paying him some thirty-odd visits at various times from June to September, 1955, in May 1956 and in May and June 1957.

He would get some temporary relief but never complete relief. He tried to be admitted to a number of City hospitals and eventually succeeded in receiving out-patient treatment at the Metropolitan Hospital between May 22, 1956 and July 31, 1956.

Thereafter, plaintiff became mentally disturbed and was committed first to Bellevue from June 25, 1957 to July 5, 1957, and then to Central Islip Hospital from July 5, 1957 to November 1, 1957, where he was treated for that mental disorder, and the record indicates that he also complained of back pain while there. Incidentally, there was testimony at the trial that his mental instability was caused in part by his back pain and also by worry about the lawsuit, and the stresses and strains of life, including possibly his various bouts with venereal diseases and his separation from his wife.

In any event, he testified that the pain continued until he was admitted into Bellevue Hospital on September 23, 1958, where he was operated on for a herniated disk. The doctor who was in charge of the operation testified that he found a herniated disk, although the operative report describes it as a degenerative disk disease.

Plaintiff left the hospital on October 24, 1958, and after some out-patient post-operative treatment, he was discharged both by the hospital and his doctor.

The doctor testified that since the operation he has been in good physical condition and that the operation was a success and that he was able to resume ordinary work but not the heavy duties of a third assistant engineer at sea.

■ Although we are not bound by the jury verdict, we are convinced that the plaintiff became disabled while on board the ship and that the physical disability continued over the years until the successful operation at Bellevue, resulting in his discharge on February 5, 1959, and that he is entitled to maintenance and cure for the entire period up to February 5, 1959.

■ The fact that the plaintiff was twice marked fit for duty, the last time on April 4, 1955, is not binding upon him or us. If, in fact, he was not fit for duty, but was still in pain and suffering, and had not achieved the maximum recovery and improvement possible, he was entitled to show this. Cf. Koslusky v. United States, 2 Cir., 1953, 208 F.2d 957, 959.

■ The operation performed at Bellevue was to remedy the very condition that was initially diagnosed at the Tripler Army Hospital in Honolulu. This condition had disabled plaintiff while in the service of defendant's ship, and for which the defendant became obligated to him for maintenance and cure. This obligation continued, notwithstanding the fit for duty markings of the Marine hospitals, so long as the condition existed and improvement was medically possible.

The jury, by its verdict, has discredited the findings of fit for duty and we independently discredit them. In retrospect, it is clear that further improvement was still very possible at the time he was discharged from care at the Marine hospitals, and the maximum improvement was not achieved until the operation in Bellevue.

■ We find that plaintiff is entitled to recover for maintenance but not for any obligations incurred or expenditures for medical treatment. Plaintiff was unable to secure free at the Marine hospitals the medical attention necessary to improve his condition subsequent to the April 4th discharge. Ordinarily he would then be entitled to recover in an action for maintenance and cure any expenditures or obligations incurred in securing treatment elsewhere. Livanos v. National Bulk Carriers, 2 Cir., 1957, 248 F.2d 815, 817.

However, evidence of such obligations and expenditures was adduced upon the trial of the negligence and unseaworthi-

ness claims and instructions were given to the jury with respect thereto. Recovery therefor presumably was included in the jury's verdict. Bartholomew v. Universe Tankships, Inc., 2 Cir., 1960, 279 F.2d 911; McCarthy v. American Eastern Corp., 3 Cir., 1949, 175 F.2d 727, 729.

No evidence as to the value of the room and board, to which plaintiff would be entitled as part of his wages while aboard ship, was adduced, however, nor instructions given the jury with respect thereto. Bartholomew v. Universe Tankships, Inc., supra. Accordingly, plaintiff is entitled to maintenance at the rate of $8 per day, as provided in the collective bargaining agreement between defendant and the plaintiff's union.

The computations of time for which he is entitled to be paid maintenance is as follows:

| | |
|---|---|
| April 5, 1955 to December 31, 1955 | 270 days |
| January 1, 1956 to December 31, 1956 | 365 days |
| January 1, 1957 to December 31, 1957 (Less the period 6/25/57 to 11/1/57 when he was an in-patient at Bellevue and Central Islip) | 235 days |
| January 1, 1958 to December 31, 1958 (Less 9/23/58 to 10/24/58 when he was an in-patient at Bellevue | 333 days |
| January 1, 1959 to February 5, 1959 (The date he was discharged from Bellevue as an out-patient receiving post-operative care) | 36 days |
| Total: | 1239 days |

1239 days x $8.00 = $9,912.00

——◆——

Of course, from that should be subtracted the wages that he earned. Perez v. Suwanee S. S. Co., 2 Cir., 1956, 239 F.2d 180, 181. Plaintiff testified that during this period of time he would occasionally secure positions as night relief engineer on certain vessels while they were in port and he would work seven or eight days. His testimony was to the effect that he worked on four of five such vessels, but no testimony was received as to the amount of wages he earned.

In plaintiff's brief it is computed that he worked a total of 34 nights and earned approximately $900. We will therefore, subject to correction, reduce the award by that amount, which would leave $9,012.

Plaintiff testified that he was physically unable to work during the time in question; that the few times he did work were cut short because of the onset of pain which resulted from routine exertions incident to the duties of a night relief engineer. In effect, he says that his pain and suffering precluded him from work for the most part and that therefore he was not able to work so as to mitigate his damages. The jury apparently believed him, and so do we.

Accordingly, we find that the plaintiff is entitled to a judgment in the sum of $9,012 for maintenance and cure, without interest, but interest from the date of judgment.

Settle order on notice.

This memorandum is in lieu of findings of fact and conclusions of law.