Patrick E. **MURPHY**, Libelant,

v.

**S.S. PANOCEANIC FAITH**, Her Engine, Boilers, Tackle, Apparel and Furniture, and Pan Oceanic Tankers Corporation, Respondent.

No. 7162.

United States District Court
E. D. Louisiana,
New Orleans Division.

May 12, 1965.

A. I. Graffagnino and Alvin Rudy Eason, Metairie, La., for libelant.

Chaffe, McCall, Phillips, Burke, Toler & Hopkins, J. Dwight LeBlanc, Jr., New Orleans, La., for respondent.

AINSWORTH, District Judge:

Partial summary judgment is sought by both libelant and respondent in this action in admiralty for the recovery of damages growing out of an alleged maritime tort and unseaworthiness of the vessel SS PANOCEANIC FAITH, as to the incidental claim for maintenance and cure.

On October 22, 1964, libelant suffered a knee injury while aboard the SS PANOCEANIC FAITH at Recife, Brazil. He was returned by plane from Tunis to the United States and was admitted for treatment to the U. S. Public Health Service Hospital at New Orleans, Loui-

siana, on November 13, 1964, where he remained as an in-patient until December 1, 1964. The hospital declared him fit for duty on January 5, 1965. Three days later he attempted to return to work, but his knee "locked" causing him to fall at the union hall before he was hired. On the following day he was examined by his own orthopedist, Dr. Saer, whose impression was that the patient's history was "a little suggestive of a meniscal tear"; however, Dr. Saer reported that it would be permissible for libelant to return to duty since there certainly was not enough evidence to suggest arthrotomy at that time, and use of the knee and further observation was all that could be recommended then.

On the next day after his examination by Dr. Saer, libelant returned to the Orthopedic Clinic of the U. S. Public Health Service Hospital, where he was declared not fit for duty, and where he was seen as an out-patient for approximately one month. On February 9, 1965, the Clinical Record of the U. S. Public Health Service Hospital shows that an examination of libelant was negative, there being "no objective evidence of orthopedic abnormality in right knee." The doctor's notes show that he was "unable to account for this patient's symptoms on the basis of any pathology within the right knee." However, libelant was not discharged. Instead he was still deemed unfit for duty and was given a return date for approximately two months hence for a psychiatric evaluation. Libelant, persisting in his belief that his pain and symptoms were of a physical nature, consulted an orthopedic surgeon of his own choice, a Dr. Neely at Mobile, Alabama. This examination revealed that libelant "had sustained a torn medial meniscus of the posterior aspect of the right knee." Dr. Neely performed an arthrotomy on February 19, 1965 and removed a "torn knee cartilage." Approximately a month later, the Clinical Director of the U. S. Public Health Service Hospital, Dr. H. Basshard, reported:

"On 2/16/65 Dr. Neely was consulted and 2/19/65 the right knee was operated

and a torn medial meniscal found. Dr. Thompson USPHS Orthopedic Surgeon feels that 'Mr. Patrick, *suffered from the same recurring and persisting disorder*, Oct. 22, 1964 [the date of the injury] to 2/19/65 [the date of surgery]. In reviewing the history and in view of surgical findings *it is probable and medically logical to assume that the lacerated cartilage (meniscus) was the source of the patient's symptoms*. At the present time the patient shows no evidence of any excessive nervousness." (Emphasis supplied.) Thus the prior finding of "no objective evidence of orthopedic abnormality" was refuted by its own source, the U. S. Public Health Service Hospital, and the erroneous diagnosis given was thus corrected.

Respondent opposes libelant's motion for partial summary judgment for maintenance and cure and seeks its own summary judgment denying maintenance and cure on three grounds: The fit-for-duty slip of the hospital dated January 5, 1965; the alleged rejection of libelant of the services of the U. S. Public Health Service Hospital; and the hypothetical possibility that libelant's symptoms could have been caused by a second injury unrelated to his initial injury. Respondent argues that there are certain discrepancies in the medical evidence amounting to genuine controversies precluding the granting of libelant's motion under Admiralty Rule 58(a). An examination of the foregoing facts shows that no such controversy exists as to any material fact.

It is a well-established rule of maritime law that a shipowner is obligated to furnish medical care and maintenance when a seaman is injured or becomes ill in the ship's service until the seaman is cured or recovery under treatment is no longer possible. Farrell v. United States, 1949, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850; Calmar S. S. Corp. v. Taylor, 1938, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993; Fernandez v. United Fruit Company, 5 Cir., 1961, 287 F.2d 447. The date of issuance of a fit-for-duty slip is generally the date used

for determining the end of a period for which maintenance and cure are due. Dobbs v. Lykes Brothers Steamship Company, 5 Cir., 1957, 243 F.2d 55. However, this date is not conclusive. Koslusky v. United States, 2 Cir., 1953, 208 F.2d 957; Diniero v. United States Lines Company, S.D., N.Y., 1960, 185 F.Supp. 818; Gomez v. Alcoa Steamship Company, S.D., Ala., 1960, 186 F.Supp. 321. Libelant was found fit for duty by the hospital on January 5, 1965, but only five days later was found not fit for duty by the same hospital. In the interim libelant had attempted to return to work, fell, and thereafter consulted Dr. Saer. Reason dictates that the court should disregard the date on which a claimant is declared fit for duty where only five days later his status was reversed and he was found unfit for duty, and where the Public Health Service Hospital subsequently retracted its diagnoses and recommendations by confirming positive findings of the operating physician. Both Dr. Basshard and Dr. Thompson of the Public Health Service agreed that "In reviewing the history and in view of the surgical findings it is probable and medically logical to assume that the lacerated cartilage (meniscus) was the source of the patient's symptoms."

■ Respondent's contention that libelant rejected treatment available to him at the Public Health Service Hospital is not well founded. Libelant diligently used these facilities, first as an in-patient and later as an out-patient from November 12, 1964 until February 9, 1965, with the exception of one visit to Dr. Saer following his fall when he attempted to return to work. He sought additional medical treatment by Dr. Neely only after the Public Health Service had failed to effect a cure and had suggested psychiatric evaluation at a date two months in the future. His decision to consult a private orthopedic surgeon under the circumstances here cannot be said to be an unreasonable rejection of the free hospital facilities, which would preclude his recovery of maintenance and cure. Gomez v. Alcoa Steamship Company, supra; The Balsa, 3 Cir., 1926, 10 F.2d 408. While a seaman's right to maintenance and cure is forfeited by voluntary rejection of free hospital care, "such rule is not inexorably applied, and other factors present must be taken into account and given effect." Luth v. Palmer Shipping Corp., 3 Cir., 1954, 210 F.2d 224.

■ Respondent's contention that libelant's condition may have been caused by an accident subsequent to his original injury is based merely on conjecture, is unsupported, and actually contradicted by the subsequent findings of the Public Health Service itself.

As of March 26, 1965 libelant was still under medical care. His motion for partial summary judgment is granted, and we hold that he is therefore entitled to accumulated maintenance at the rate of $8.00 per day, for the period beginning on January 6, 1965, when these benefits were discontinued by respondent, up to and including March 26, 1965, excluding the number of days in which libelant was hospitalized for surgery, and to medical expenses actually incurred by him. The claim for damages for failure to provide libelant with maintenance and cure and attorney's fees is denied.

It is further ordered that the foregoing shall be without prejudice to the libelant to claim additional maintenance and cure beyond March 26, 1965 and damages for failure of respondent to pay same.

Decree accordingly, with interest from date of decree.