Manuel MARTINEZ, Plaintiff,

v.

STAR FISH AND OYSTER CO., INC.,
Defendant.

Civ. A. No. 6296–70–T.

United States District Court,
S. D. Alabama, S. D.

Oct. 23, 1974.

Ross M. Diamond, III, Mobile, Ala., Ned W. Johnson, Beaumont, Tex., for plaintiff.

Thomas M. Galloway, and Robert H. Smith, Mobile, Ala., for defendant.

DANIEL HOLCOMBE THOMAS, District Judge.

The above-styled cause was heard by the Court without a jury and taken under submission on the 25th day of September 1974. Having considered the testimony, exhibits, stipulations and arguments of counsel, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. This action was brought by the plaintiff to recover maintenance and cure and unearned wages for injuries which he sustained while in the service of the M/V BABY ANN, a 70-foot wooden fishing vessel built in 1929 and owned and operated by the defendant, Star Fish and Oyster Co., Inc. (Star Fish). Plaintiff also seeks damages for failure on the part of Star Fish to provide said maintenance and cure. Finally, plaintiff seeks general damages for Star Fish's negligence and its failure to provide a seaworthy vessel. In reply, Star Fish asserts in its Answer that plaintiff's injuries resulted from plaintiff's own negligence.

2. Plaintiff's trip aboard the BABY ANN was his first occasion to be employed as a crewmember of a fishing vessel. Prior to this, plaintiff had been employed primarily by his father for whom he at different times repaired radio and television sets and also drove trucks and moved furniture in connection with his father's transfer and storage business. Plaintiff had also previously worked for about three years as a "reader" for a local newspaper and was laid off from that job several years prior to 1969. Al-

though at one time he did maintain his own apartment, plaintiff has resided most of his life at his father's home and was staying there during the period immediately prior to his trip on the BABY ANN.

3. Having been recruited by the BABY ANN's captain, the plaintiff signed on board the vessel as a deckhand in Galveston, Texas on March 21, 1969. The BABY ANN then departed Galveston with the intended purpose of fishing while enroute to Mobile, Alabama. The fishing trip produced a "broker", meaning few fish were caught, as a result of which Star Fish was obligated to pay each crewmember $25.00 in wages, These wages have never been paid the plaintiff.

4. Early on the morning of March 24, 1969, the plaintiff was injured while the BABY ANN was anchored at the East Flower Garden, an area of the Gulf of Mexico located some one hundred twenty-five miles southeast of Galveston. At the time of his accident, plaintiff was leaving the galley and going aft when he slipped on some oil on the deck, fell backwards and struck his head and lower back on the forward fish hatch. The prevailing weather conditions at the East Flower Garden were good with only moderate wave or swell heights.

5. Prior to plaintiff's accident, the plaintiff and at least one other crewmember had complained to the BABY ANN's captain about diesel oil from an above deck fuel tank being on the deck and causing a slippery condition. Other than having the deck washed down, the captain did nothing further to prevent the accumulation of oil on the deck.

6. After his fall, plaintiff had to be assisted below deck to his bunk. As a result of his injuries, he was forced to remain in his bunk until the BABY ANN returned to Galveston, arriving there on March 26, 1969. Throughout the period between his accident and arrival back at Galveston, plaintiff complained about severe back pains. At Galveston, plaintiff's condition necessitated the use of a stretcher to move him from his bunk to a waiting ambulance. Plaintiff was given a master's certificate by the BABY ANN's captain and then taken to the local Public Health Service Hospital.

7. Plaintiff was admitted to the Public Health Service Hospital and remained there until March 31, 1969, at which time he was discharged with a designation of "not fit for duty". Plaintiff returned to the public health hospital at least five times during the following year for further treatment and examination. His last visit to the public health hospital was on November 30, 1970. Previously on April 23, 1969, plaintiff began treatment by a private neurosurgeon. Plaintiff was examined and treated by this private physician on eleven occasions, with charges totalling $210.00.

8. As a result of his fall aboard the BABY ANN, plaintiff suffered a mild cerebral concussion and a strain or sprain of the lower back. Plaintiff's recovery to a point of maximum cure required eighteen (18) months from the date of injury. Additionally, plaintiff sustained a ten percent (10%) general disability. Since his accident, plaintiff has experienced occasional dizzy spells. However, plaintiff's earning capacity has in no way been diminished by his injuries or his disability.

9. After being discharged from the Public Health Service Hospital, plaintiff returned to live at his father's home where he still resides. For approximately eight (8) months, plaintiff was unable to perform any work. Following this period, he again worked for his father although limited at first to radio and television repair and light furniture moving. Within another year's time, plaintiff was able to again help drive his father's trucks. Later, plaintiff was temporarily employed for about three months by a local furniture company as a truck driver and furniture mover. Although plaintiff continues to work for his father, he has now ceased driving trucks due to problems caused by his dizzy spells. In essence however, plain-

tiff has returned to substantially the same life he had known prior to his accident onboard the BABY ANN. While working for his father, both before and commencing with eight months after his accident, plaintiff's wages have been $75.00 per week.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this matter based upon its admiralty and maritime jurisdiction. 28 U.S.C.A. § 1333.

2. The plaintiff herein seeks maintenance and cure for injuries which he sustained while employed as a seaman in the service of the defendant's vessel, lost wages and damages for failure on the part of the defendant to pay said maintenance and cure. Plaintiff also seeks damages for negligence under the Jones Act, 46 U.S.C.A. § 688, and damages for unseaworthiness under general maritime law.

### I

3. Historically, the duty of the shipowner to provide an injured seaman maintenance and cure has been viewed as necessitated by the need to alleviate the physical and financial hardships which would otherwise beset the seaman when set ashore. Harden v. Gordon, 11 Fed.Cas. p. 480, Case No. 6,047 (C.C.D. Me.1823); Reed v. Canfield, 20 Fed.Cas. p. 426, Case No. 11,641 (C.C.D.Mass. 1832); Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 528, 58 S.Ct. 651, 82 L.Ed. 993 (1938).[1]

■ 4. In keeping with its historical purpose, the duty to provide maintenance and cure extends only as far as the seaman's needs. Calmar S.S. Corp. v. Taylor, supra, at 530, 58 S.Ct. 651. Recovery by a seaman has therefore been limited to amounts actually expended or liabilities actually incurred by him for his maintenance and cure. United States v. Johnson, 160 F.2d 789, 1947 AMC 765 (CA9 1947), aff'd on the question of maintenance, 333 U.S. 46, 50, 68 S.Ct. 391, 92 L.Ed. 468; Marine Drilling, Inc. v. Landry, 302 F.2d 127, 1962 AMC 1957 (CA5 1962).[2] Accordingly, a seaman has no right to maintenance and cure when he lives at home with his parents and has incurred no actual expense or liability for his care and support. United States v. Johnson, supra; Field v. Waterman S.S. Corp., 104 F.2d 849, 1939 AMC 1555 (CA5 1939). Under such circumstances, the seaman must bear the burden of proving that he himself did in fact incur expense or liability for his maintenance and cure before he will be entitled to a recovery. Marine Drilling, Inc. v. Landry, supra.

■ 5. Upon being discharged from the Public Health Service Hospital, plaintiff returned to his father's home where he had resided prior to his accident and where he continues to reside. With the exception of medical expenses discussed below, plaintiff presented no evidence indicating that he had actually incurred any expense or liability for his maintenance and cure during the period of his convalescence. Accordingly, the Court is of the opinion that the plaintiff is not entitled to an award for maintenance and cure.

■ 6. The plaintiff did present evidence of medical expenses incurred by him and arising out of services rendered

---

1. The other primary reasons stated for maintenance and cure are the inducement to masters and owners to protect the safety and health of seamen while in the service and the strong national interest in maintaining the morale and physical effectiveness of the merchant marine.

2. See also, Ballard v. Alcoa S. S. Co., 122 F.Supp. 10, 1954 AMC 1378 (S.D.Ala.1954) (seaman not entitled to maintenance for time spent in jail); Calmar S. S. Corp. v. Taylor, supra, (seaman not entitled to maintenance and cure while an inpatient of a Public Health Service Hospital); Stankiewicz v. United Fruit S. S. Corp., 229 F.2d 580, 1956 AMC 559 (CA2 1956); Williams v. United States, 228 F.2d 129, 1956 AMC 80 (CA4 1955); Dodd v. The Peggy G., 149 F.Supp. 823, 1957 AMC 764 (S.D.Ala.1957); Nunes v. Farrell Lines, Inc., 129 F.Supp. 147, 1955 AMC 684 (D.Mass.1955); aff'd as to this point, 227 F.2d 619 (CA1 1955); Gilmore and Black, Admiralty § 266; 2 Norris, The Law of Seamen § 573.

by a private neurosurgeon. But the prevailing rule is that a seaman who leaves a Public Health Service Hospital for special or private treatment at a private hospital or the office of a private physician when such treatment is available free of charge at the public health hospital, cannot recover the cost of such treatment. Kossick v. United Fruit Co., 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961). This general rule for forfeiture of maintenance and cure under such circumstances has recently been stated by the Fifth Circuit in Oswalt v. Williamson Towing Co., Inc., 488 F.2d 51, 53, 54, 1974 AMC 1311 (CA5 1974).

A forfeiture for unreasonable refusal (to accept medical care offered by the employer or through a government hospital) is called into play in one of two ways. . . . (1) the seaman may simply reject all timely medical attention or quit participation in a course of therapy already begun. . . . (2) injured seamen who require extensive convalescence are ordinarily cared for at public health and marine hospitals. When these tax supported facilities are used the seaman incurs no expense for subsistence or medical care during the recovery period. Consequently, he is entitled to no compensation from his employer for the non-existence expenditures. . . . . The logical corollary to this general rule provides that a seaman who unreasonably refuses such free care cannot by his irrational action force the shipowner to bear the added cost of a private physician and recuperative facilities.[3]

7. There are cases which uphold the seaman's right to recover for maintenance and cure notwithstanding the injured seaman's refusal to accept the care provided by the employer or through a Public Health Service Hospital, but those cases all involve facts establishing either that the medical service offered by the employer or the public service hospital was clearly inadequate or that other reasonable grounds existed for refusing it. Oswalt v. Williamson Towing Co., supra.[4]

■ 8. Plaintiff here chose to utilize the services of a private physician and to forego the free services available through the Public Health Service Hospital. He made this election at a time when he was still being treated as an outpatient by the public health hospital. No evidence was presented by the plaintiff to establish that the services rendered by the private physician, although beneficial, were not available to him at the public health hospital. The Court therefore is of the opinion that the plaintiff is also not entitled to recover under a theory of maintenance and cure the amounts expended by him for private medical care.

9. The Court, having found the shipowner not liable for any maintenance and cure, does not reach the question of damages for failure to pay the same.

■ 10. When a seaman is injured or becomes ill during the course of a voyage, the shipowner is obligated to pay his base wages for the balance of either the voyage or the period of employment or until he is fit for duty, whichever occurs first. Vickers v. Tumey,

---

3. The Court went on to find that, under the particular facts of the case before it, forfeiture of maintenance and cure was not appropriate. There, the shipowner did not utilize the services of the government hospitals but rather customarily referred its injured employees to private physicians on an *ad hoc* basis in a particular city. Plaintiff had elected to be treated by a private physician in a different city.

4. See, Sobosle v. United States Steel Corp., 359 F.2d 7, 1966 AMC 886 (CA3 1966) (seaman's failure to submit to recommended

medical treatment held not to be an unreasonable refusal of medical treatment where personal difficulties, neuroses and anxieties deprived seaman of normal faculties) ; Murphy v. American Barge Line Co., 169 F.2d 61, 1949 AMC 158 (CA3 1948), cert. denied, 335 U.S. 859, 69 S.Ct. 133, 93 L.Ed. 406 (where shipowner refused to provide transportation to a distant hospital) ; Murphy v. Panoceanic Faith, 241 F.Supp. 540, 1965 AMC 2753 (E.D.La.1965) (where hospital had incorrectly diagnosed and failed to cure seaman's injured knee).

290 F.2d 426, 1961 AMC 1173 (CA5 1961). The shipowner's obligation to pay these wages is concurrent with, but not dependent upon, his obligation of maintenance and cure. The fact that the shipowner is not under the particular facts of the case obligated to pay maintenance and cure, as for example here, because the plaintiff lived with his parents does not effect his obligation to pay wages. United States v. Johnson, supra. The Court is therefore of the opinion that the plaintiff is entitled to his wages for the duration of the fishing trip which, since the trip was a "broker", would be the standard $25.00 for a crewmember.

## II.

■■■ 11. In order to be entitled to a recovery for damages under the Jones Act for negligence, plaintiff must bear the burden of establishing the following:

1. The plaintiff was a seaman.

2. The plaintiff was a crewmember of the vessel involved.

3. The defendant was the owner *pro hac vice* of the vessel at the time of the accident.

4. The plaintiff was injured while in the service of the vessel.

5. The plaintiff was an employee of the defendant.

6. Negligence on the part of the defendant was a proximate cause of plaintiff's injuries.

Kanishcher v. Irwin Operating Co., 215 F.2d 300, 1954 AMC 1812 (CA5 1954), cert. den., 348 U.S. 942, 75 S.Ct. 363, 99 L.Ed. 737. It was stipulated to by the parties involved that the plaintiff was a crewmember of the BABY ANN and that the defendant was the owner and operator of that vessel. It follows that the plaintiff was a seaman within the meaning of the Jones Act, Osland v.

Star Fish & Oyster Co., 107 F.2d 113, 1940 AMC 127 (CA5 1939), cert. den., 314 U.S. 615, 62 S.Ct. 86, 86 L.Ed. 495, and furthermore, that there existed an employee-employer relationship between the plaintiff and defendant, Southern Shell Fish Co. v. Plainsance, 196 F.2d 312, 1952 AMC 883 (CA5 1952). In addition, the plaintiff was in the service of his vessel at the time of his accident even though he was not actually fishing or working at the moment of the accident. Sandberg v. Washington Fish & Oyster Co., 138 F.2d 801, 1943 AMC 1337 (CA9 1943).[5]

■ 12. As to the issue of negligence, the Court feels that negligence did exist on the part of the defendant's captain, and therefore the defendant, in failing to correct the oily condition of his decks despite complaints from his crewmembers. Firipis v. The Margritis, 181 F.Supp. 48, 1961 AMC 634 (E.D.Va. 1960), aff'd, Southern Cross. S.S. Co. v. Firipis, 285 F.2d 651 (CA4 1960), cert. den., 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed.2d 859.[6] Furthermore, the Court finds that the negligence of the defendant was the proximate cause of the plaintiff's injuries and that the plaintiff himself was free of any negligence on his own part.

■■ 13. Plaintiff's injuries were painful, especially during the intervening time between the occurrence of the accident and his arrival at the Public Health Service Hospital. His injuries also caused him to suffer a 10% general permanent disability. It is stressed however that the Court is not of the opinion that plaintiff's injuries and resulting disability have in any way impaired his earning capacity on a permanent basis. Plaintiff was temporarily unable to work for a period of eight (8) months after the accident. As noted previously, plaintiff incurred medical ex-

---

5. Also see, Holm v. Cities Service Transp. Co., 60 F.2d 721, 1932 AMC 1188 (CA2 1932); States S. S. Co. v. Berglann, 41 F.2d 456, 1930 AMC 1392 (CA9 1930), cert. den. 282 U.S. 868, 51 S.Ct. 75, 75 L.Ed. 767.

6. Also see, 2 Norris, The Law of Seamen § 691, and the cases cited there.

**566**

penses of $210.00, recovery of which under a theory of maintenance and cure has been denied. It is now well established that an injured seaman can recover in damages under the Jones Act for pain and suffering, Blake v. Port Everglades Towing Co., 425 F.2d 662, 1970 AMC 1913 (CA5 1970); for lost wages, *Blake,* supra; and for medical expenses, Fitzgerald v. United States Lines, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963). The Court is therefore of the opinion that plaintiff is entitled to recover the following: Pain and Suffering and 10% Disability, $2,500.00; Lost Wages, $2,400.00; and Medical Expenses, $210.00, with a total recovery of $5,110.00 for damages.

14. The Court having found the shipowner guilty of negligence does not reach the question of unseaworthiness.

A decree will be entered in accordance herewith awarding the plaintiff a total of $5,135.00.