Max MOREL, Plaintiff-Appellee,

v.

SABINE TOWING & TRANSPORTA-
TION CO., INC., Defendant-Appel-
lant.

No. 81–2174
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 5, 1982.
Rehearing Denied April 1, 1982.

Ross, Griggs & Harrison, Charles W. Kel-
ly, Houston, Tex., for defendant-appellant.

Provost, Umphrey, Doyle & McPherson,
Joseph Robert Steele, Port Arthur, Tex., for
plaintiff-appellee.

Before BROWN, POLITZ and WIL-
LIAMS, Circuit Judges.

POLITZ, Circuit Judge:

This appeal challenges both the propriety
and amount of maintenance awarded an
injured seaman. Appellant questions the
sufficiency of the evidence and whether
maintenance is due for a period of recuper-
ation occurring during a paid vacation.

Max Morel injured his left hand while
working as a seaman aboard the S.S. SAN

MARCOS, a vessel owned and operated by Sabine Towing & Transportation Co., Inc., which was docked and taking on cargo at Baton Rouge, Louisiana. Adequate medical services were not available on board at the time of the accident and the captain was absent. Morel and a fellow seaman attended to the injury, wrapping it in a makeshift rag bandage. No medical treatment was provided. Approximately a week later, the ship docked at Baltimore, Maryland. Morel left the ship and returned to his home in Port Arthur, Texas, for a two month paid vacation. He never returned to the vessel.

In the first few weeks after his return home, Morel's injured hand was treated by his wife using "home remedies." When these efforts failed to give relief, Morel saw a doctor in Guadalajara, Mexico, while he and his wife and daughter were visiting his wife's mother. He later saw a doctor in Port Arthur, who referred him to a specialist. The specialist performed surgery on Morel's left index finger. Morel continues to experience some residual difficulty.

Suit was filed under the Jones Act, 46 U.S.C. § 688, and the general maritime laws. Following a bench trial, the district court awarded damages, reduced by Morel's contributory negligence, and maintenance, at the rate of $20 per day for 66 days. 507 F.Supp. 949. Sabine Towing appeals, claiming that the evidence is insufficient to support any maintenance award. Further, it argues that neither the law nor the evidence support an award of $20 per day, and that regardless of the foregoing, maintenance should not be paid during a compensated vacation. We first address the final contention.

*Maintenance During Vacation*

■ The issue whether maintenance is due for days of cure occurring during a vacation period was not presented to the district court. Ordinarily we do not consider an issue raised for the first time on appeal. There are recognized exceptions to this rule, however, *see Matter of Novack,* 639 F.2d 1274 (5th Cir. 1981), which encompass the case before us. The question

presented is a matter of law and a remand solely for its consideration is neither in the interest of justice nor judicial economy.

The question whether a shipowner must pay maintenance and pay accrued vacation is one of first impression in this circuit. We find a dearth of authoritive consideration which occasions a somewhat genetical analysis.

■ Maintenance is the equivalent of the food and lodging to which a seaman is entitled while at sea. Maintenance, and its necessary companion cure, are hallowed rights of seamen who are injured or become ill while in the service of a ship. These rights, honored by maritime nations since at least the Middle Ages, were first recognized in American maritime law during our infancy as a nation. *Harden v. Gordon,* 11 Fed.Cas. 480 (No. 6,047 (C.C.D.Me.1823)). As we recently observed: "The obligation to provide maintenance and the accompanying duty to tender cure, i.e., medical cure, to an ill or injured seaman are 'among the most ancient and pervasive of all the liabilities imposed on a shipowner.' " *Caulfield v. AC & D Marine, Inc.,* 633 F.2d 1129, 1131–32 (5th Cir. 1981) (*quoting Oswalt v. Williamson Towing Co., Inc.,* 488 F.2d 51, 54 (5th Cir. 1974)). Maintenance is neither the substitute for wages nor is it to be considered in lieu of a seaman's wages, in whole or in part.

Accumulated leave time, paid vacation, is a part of a seaman's total wages. The vessel owner or operator contracts with a seaman to pay him for the period of services performed on the vessel plus an extended period represented by accumulated leave or earned vacation. For all practical purposes, paid vacation is merely a method of deferring wage payments. Each day the seaman works he earns compensation payable in the form of a periodic wage payment, plus a paid leave entitlement. The paid leave time is a benefit which is directly attributable to the seaman's work on the vessel; it is an inherent part of the seaman's wages.

■■ We agree with our colleagues of the Third Circuit that "accumulated leave time is a method of deferred wage payment" and constitutes earned wages, separate and distinct from maintenance. *Shaw v. Ohio River Co.*, 526 F.2d 193, 199 (3rd Cir. 1975). We also agree that "in the absence of an explicit contractual provision specifying that accumulated leave time pay or other wages is to be deemed a substitute for maintenance, there is no basis for crediting such earned wages against the vessel owner's maintenance obligation." *Id.* (citing *Ward v. Union Barge Line Corp.*, 443 F.2d 565 (3rd Cir. 1971); *Haywood v. Jones & Laughlin Steel Corp.*, 107 F.Supp. 108 (W.D.Pa.1952)). In so agreeing, we do not address the validity of such a contractual agreement. That decision necessarily is deferred to another day and another record upon which the issue appropriately may be decided. In reaching our conclusion today, we take cognizance of the decisions in *Shaw*, and the cases therein cited, particularly *German v. Carnegie-Illinois Steel Corp.*, 169 F.2d 715 (3rd Cir. 1948), and *Thomas v. Humble Oil & Ref. Co.*, 420 F.2d 793 (4th Cir. 1970) (contract providing disability benefits in lieu of maintenance approved).

### Amount of Maintenance

Sabine Towing maintains that the evidence does not establish that Morel incurred any maintenance expenses and, if he did, the evidence is inadequate, under controlling precedent, to establish a per diem rate of $20. These determinations are fact findings by the district court which we are not to disturb absent a showing that they are clearly erroneous. Fed.R.Civ.P. 52(a).

For many years, maintenance in the amount of $8 per day was awarded almost universally in this circuit. In *Caulfield*, we found criticism that this amount was "obviously unrealistic" to be valid, 633 F.2d at 1132, and affirmed an award of $15 per day. The *Caulfield* court noted with approval the decision in *Robinson v. Plimsoll Marine, Inc.*, 460 F.Supp. 949 (E.D.La.1978), which awarded maintenance of $15 per day. The

district court in *Robinson* considered expert testimony to the effect that to secure the food and lodging which $8 would provide in 1969 would require $15 in 1978. We are impressed and persuaded by the logic of this analysis and are convinced of its accuracy.

The district judge in the case now before us was aware of the *Caulfield* and *Robinson* decisions, citing both. He continued the development and application of the rationale of those decisions by noting that the cost of basic goods and services had continued to increase since 1978, a factor obviously given substantial consideration in the setting of the per diem at $20.

■ Sabine Towing seeks to distinguish the present case from *Caulfield* and *Robinson*, maintaining that the amount and calibre of evidence in this record is substantially less. We agree that more evidence might have been adduced, making the determination by the district court easier. It cannot be argued seriously that Morel's testimony about the reasonable cost of room and board in Port Arthur is the most probative evidence one might conceive. If a choice was presented, evidence of actual expenditures would be more desirable. Nevertheless, the district court did not err by admitting and considering Morel's testimony.

■ Rule 701 of the Federal Rules of Evidence permits of lay witness opinion testimony "limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to . . . the determination of a fact in issue." The amount needed to sustain a mending seaman was a fact in issue and, given that Morel resides in Port Arthur, his opinion can be reasoned to have been drawn from his personal knowledge. *See* Fed.R.Evid. 602. Moreover, as in *Caulfield*, the appellant offered no evidence of the amount of maintenance due. 633 F.2d at 1132. In all of this, we are guided by the teachings of the Supreme Court that in cases posing difficult questions, the doctrines of maintenance and cure are to be construed liberally, and ambiguities and doubts are to be "re-

solved in favor of the seaman." *Vaughan v. Atkinson*, 369 U.S. 527, 532, 82 S.Ct. 997, 1000, 8 L.Ed.2d 88 (1962).

We are not prepared to say that the district court's factual findings, including reasonable inferences drawn from the evidence, assayed within the crucible of the district court's knowledge of the area involved, are clearly erroneous. Nor are we persuaded that the applications of the controlling rules of law are in error. Accordingly, the judgment of the district court is AFFIRMED.