**Robert L. MERRICK, and Philip A. Kachinski, Appellants,**

v.

**SEA–LAND SERVICE, INC., Appellee.**

No. 83–5751.

United States Court of Appeals, Third Circuit.

Argued June 12, 1984.

Decided July 11, 1984.

Ned R. Phillips, George J. Cappiello (argued), Phillips & Cappiello, P.C., New York City, Francis J. Dooley, Orange, N.J., for appellants.

Michael D. Wilson (argued), Hoboken, N.J., for appellee; Sandra R.M. Gluck, Kathleen V. McQuilling, Walker & Corsa, New York City, of counsel.

Before WEIS and BECKER, Circuit Judges, and OLIVER, District Judge.*

* Honorable John W. Oliver, Senior Judge, United States District Court for the Western District of Missouri, sitting by designation.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal involves the interrelationship of two provisions—one statutory and one contractual—designed to ensure that seamen are paid promptly for the work they perform. The statutory provision, popularly known as the penalty wage statute, is 46 U.S.C. § 596.[1] It provides that the owner of any vessel making foreign voyages must pay every seaman his "wages" within twenty-four hours after the cargo has been discharged or within four days after the seaman has been discharged, whichever occurs first. Under the same statute, if, without sufficient cause, these required payments are not made within the specified time, the owner must pay the seaman two days' pay for each day of delay in payment. Theoretically, these payments can be enormous.

The collective bargaining agreement between the defendant shipper and the union representing the plaintiff seamen is the second provision designed to ensure prompt payment. Its requirements are somewhat stricter than those of the statute, but its penalty is less severe. The agreement provides that, where a ship lands in a foreign port on a weekday, the seamen covered must be paid their wages by 5 p.m. Friday of that week. If such payments are not made, the seamen are entitled to "continuous wages" for the weekend, that is, the sum to which they would have been enti-

tled had they actually worked over the weekend.

The precise issue before us is whether an owner who pays all "ordinary wages" within the period prescribed by section 596, but not within the period provided by the collective bargaining agreement, is liable for penalty wages under section 596 for failure to pay the "continuous wages" required by the collective bargaining agreement in such circumstances. More concisely, the issue is whether "continuous wages" are "wages" for purposes of section 596. We hold that they are not. If a collective bargaining agreement provides for payment of seamen's wages in a more prompt fashion than required by section 596 and assesses its own penalty for delinquent payment, it does not further the purposes of the penalty wage statute to subject the delinquent payments of these damages to the draconian two-for-one penalties of that statutory provision. Rather, the Congressional purpose is fully satisfied where payments for actual, earned wages are made in the time period prescribed by the statute.

Accordingly, we affirm the grant of summary judgment for the defendant by the district court, 587 F.Supp. 93, which decided this case on other grounds.

### I.

The facts of this case are relatively simple. Plaintiff-appellants Robert Merrick

---

1. 46 U.S.C. § 596 reads:

   **§ 596. Time for payment**

   The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens; and in case of vessels making foreign voyages, or from a port on the Atlantic to a port on the Pacific, or vice versa, within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens; and in all cases the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum

   equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court; but this action shall not apply to masters or owners of any vessel the seamen of which are entitled to share in the profits of the cruise or voyage. This section shall not apply to fishing or whaling vessels or yachts.

   Since the time that the claims involved in this case have matured, Congress has repealed 46 U.S.C. § 596 as part of a comprehensive reorganization and recodification of the Shipping Code. *See* Act of August 26, 1983, Pub.L. No. 98–89, § 4(b), 97 Stat. 500. Under the terms of the repealing statute, however, this case is still governed by old section 596 since the claim involved here matured prior to passage of the repealing statute. In the future, penalty wage claims will be governed by 46 U.S.C. § 10313.

and Phillip Kachinski were employed as marine engineering officers aboard the Sea-Land vessel S.S. SEA–LAND ADVENTURER on a foreign voyage that began in mid-May, 1981. The ADVENTURER arrived in Bremerhaven, Germany, sometime on or before noon May 29, 1981, which was a Friday.[2] The ADVENTURER apparently stayed in port for the weekend.

Section 4A(d) of the collective bargaining agreement between Sea-Land and the Marine Engineers Beneficial Association, which represented Merrick and Kachinski, provided that:

> In the case of any vessel which arrives in port during a weekday, and prior to noon on Friday, where there is to be a payoff for the licensed engineers and the vessel will be in port on the following Monday, said pay-off must be completed prior to 2 P.M. on a weekday of the same week, unless facilities are provided to furnish non-negotiable instruments in lieu of cash in which event pay-off shall be completed by 5 P.M.; otherwise, the pay-off shall be made on the succeeding Monday with continuous wages (and board and lodging unless same have been provided by the Company) through and including the day of pay-off.

This agreement would seem to have required Sea-Land to pay Merrick and Kachinski their wages by 5 p.m. Friday at the latest. No payment was made until Saturday, May 30, 1981, however, at which time Merrick's and Kachinski's shipping articles were terminated.[3] Sea-Land did not pay Merrick and Kachinski the "continuous wages" to which they would seem to have been entitled under the collective bargaining agreement.

Merrick and Kachinski made a claim for three days-worth of continuous wages by calling it to the attention of their union, which submitted the grievance to Sea-Land pursuant to the collective bargaining agreement. After a flurry of letters and conferences concerning this claim and others of Merrick and Kachinski arising out of subsequent voyages, on October 2, 1981, Sea-Land forwarded a check for $133.00 to Merrick and of $176.00 to Kachinski, which sums apparently represent two days' "continuous wages" less withholding of various taxes. Merrick and Kachinski cashed these checks.

On November 25, 1981, Merrick and Kachinski filed suit against Sea-Land claiming penalty wages under section 596 for the delay in payment from May 30, 1981, to October 2, 1981, of continuous wages required by the collective bargaining agreement.[4] On February 15, 1983, the district court granted Sea-Land's motion for summary judgment and denied subsequent motions for reconsideration. In a brief memorandum opinion accompanying the orders denying the motions for reconsideration, the district court asserted that Sea-Land's payment of two days' continuous wages following the initial claim for three days settled the claim for penalty wages under 46 U.S.C. § 596. The district court cited the Supreme Court's opinion in *U.S. Bulk Carriers v. Arguelles*, 400 U.S. 351, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971), and our decision in *Cady v. Twin Rivers Towing Co.*, 486 F.2d 1335 (3d Cir.1973), in support of its understanding concerning the effect on later court actions of submitting statutory claims to arbitration. "To allow a later suit under the statute would not only do violence to the principles laid down by the two cases cited," the district court explained, "but it converts the option to pursue one course [arbitration] or the other [suit] into a right to pursue and recover on both. It would rob the settlement of all meaning."

---

2. The record is not entirely clear on this point. It appears, however, that the ADVENTURER arrived on May 26, 1981. There is also no evidence that we can find in the record disclosing when, if ever, the cargo was discharged.

3. This discharge before one month's wages were earned gave rise to a claim under 46 U.S.C.

§ 594. This claim has apparently been resolved, however, and is not before us on appeal.

4. Merrick's claim thus amounted to approximately $18,000; Kachinski's claim amounted to approximately $26,000.

The plaintiffs appealed, contending (1) that claims under 46 U.S.C. § 596 cannot be submitted to arbitration under a collective bargaining agreement; (2) that this collective bargaining agreement did not call for arbitration of claims under 46 U.S.C. § 596; and (3) that, in any event, plaintiffs did not submit their penalty wage claim to arbitration. The defendant rebuts each of these arguments and asserts additionally that (1) continuous wages are not wages for purposes of section 596; (2) it had "sufficient cause" to withhold payment, since the initial claim for the third day of continuous wages was wholly illegitimate; and (3) plaintiffs' alleged bad faith bars them from recovery.

We decline to decide the three thorny issues presented by plaintiff as grounds for appeal, but instead, pursuant to our prerogative under *Dandridge v. Williams*, 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 1156 n. 6, 25 L.Ed.2d 491 (1970), affirm the grant of summary judgment for Sea-Land on grounds of the first affirmative defense it interposed: "continuous wages," as defined in the collective bargaining agreement, are not "wages" for purposes of section 596.

## II.

■ It will not always be easy for courts to determine which of the many payments that the owner or master of a vessel may make to a seaman should properly be classified as wages. It is clear, however, both from logic and precedent that courts cannot make this determination of the basis of the name accorded the payments by the parties. Such a rule would permit overreaching shippers to eviscerate the protections Congress gave seamen in section 596 simply by using the economic power they are thought to possess to affix other labels on the payments they must make to seamen in exchange for their work. Similarly, in these days of powerful maritime unions, a judicial approach that permitted the economic power of the unions to determine what payments constituted wages, might expand the reach of section 596 far beyond

that originally envisaged by the law makers that promulgated that provision.

For this reason, and as suggested by the Second Circuit in *Glandzis v. Callinicos*, 140 F.2d 111 (2d Cir.1944), courts must look to economic reality and thus determine the "character" of the payments involved. Thus, it has been held that payments made to seamen to reward them for entering war zones and that overtime payments are "wages" within the meaning of section 596. *Id; Monteiro v. Sociedad Maritima Son Nicolas S.A.*, 280 F.2d 568, 573 (2d Cir.), *cert. denied*, 364 U.S. 915, 81 S.Ct. 272, 5 L.Ed.2d 228 (1960). These payments are "compensation paid by an employer for services rendered him by others ...." within the meaning of section 596. Applying the same principles, however, courts have also held that payments required by 46 U.S.C. § 594 to compensate the seamen for premature terminations of voyages are not "wages" subject to the section 596 penalty, but rather "in the nature of compensation or liquidated damages for breach of a contract." *Lewis v. Texaco, Inc.*, 1975 A.M.C. 61 (S.D.N.Y.1974), *aff'd*, 527 F.2d 921 (2d Cir.1975); *see Newton v. Gulf Oil Corp.*, 87 F.Supp. 210, 211 (E.D.Pa.1949).

■ We hold that the "continuous wages" provided for in the collective bargaining agreement, like payments required by statute under section 594, are not "wages" as Congress understood the term, but rather "liquidated damages for breach of a contract." The payments bear no relation to work performed by the seaman and are not intended to induce such work. Rather, the payments are intended to reward the seaman and punish the owner or master for delay in prompt payment of wages from the time that the ship comes into port. Though not identical, the purpose is similar to section 596 itself.

Our holding should not be seen as condoning the seemingly unreasonable delay of the defendant here in paying two days of continuous wages owed seamen Merrick and Kachinski under the collective bargaining agreement. Nor should it be seen as foreclosing the parties from providing pri-

vate enforcement mechanisms to ensure the prompt payment of wages. A collective bargaining agreement may provide for penalties that escalate with delay in the event wages are not paid at a time provided for by the collective bargaining agreement. The penalty wage provisions created by Congress, however, may not be used to penalize delay in the payment of penalties provided for by a collective bargaining agreement for delay in the payment of wages. That heaping of penalty upon penalty is, in essence, what is attempted here. Like the attempt of two ancient Greeks to pile Pelion upon Ossa in the attempt to reach Olympus, it will not work.

For the reasons set forth above, we will affirm the summary judgment for the defendant.