William **PETERSEN,**
Plaintiff/Appellant,

v.

**INTEROCEAN SHIPS, INC.,**
Defendant/Appellee.

No. 86–5938.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 6, 1987.

Decided July 29, 1987.

Dennis J. Hayes, San Diego, Cal., for plaintiff-appellant.

Stephen L. Schreiner, San Diego, Cal., for defendant-appellee.

Before NELSON, BEEZER and LEAVY,* Circuit Judges.

LEAVY, Circuit Judge:

Petersen, a seaman, brought this action to recover wages withheld by Interocean, his employer, in violation of 46 U.S.C. §§ 10313(f) and 10314(a)(1)(A), and for penalties under 46 U.S.C. § 10313(g).[1] On cross-motions for summary judgment, the trial court found that no genuine issue of material fact existed to dispute that: 1) Petersen accepted payment in settlement of his first wage claim, and 2) Interocean had sufficient cause for withholding Petersen's pay. On this basis the trial court granted summary judgment for Interocean on Petersen's first wage claim and claim for penalties. The trial court found that a genuine issue of material fact remained as to whether Interocean owed Petersen for pay that it withheld from his third voyage earnings. Petersen appeals the trial court's grant of partial summary judgment on his first wage claim and claim for penalties.

---

* Honorable Edward Leavy, United States Circuit Judge, at the time of hearing was a United States District Judge, District of Oregon, sitting by designation.

1. 46 U.S.C. § 10313 provides penalties for failure to promptly pay a seaman's wages. The statute states:
   (f) At the end of a voyage, the master shall pay each seaman the balance of wages due the seaman within 24 hours after the cargo has been discharged or within 4 days after the seaman is discharged, whichever is earlier. . . .
   (g) When payment is not made as provided under subsection (f) of this section without

sufficient cause, the master or owner shall pay to the seaman 2 days' wages for each day payment is delayed.

46 U.S.C. § 10314 prohibits wage advancements to seaman. It states:
   (a)(1) A person may not—
   (A) pay a seaman wages in advance of the time when the seaman has earned the wages;

Congress reorganized and recodified the shipping code in 1984. 46 U.S.C. §§ 10313 and 10314 were formerly designated as 46 U.S.C. §§ 596 and 597.

We affirm the grant of summary judgment on both claims.

## Facts

In February 1983, Interocean Ships hired William Petersen as a seaman. Petersen made three voyages during his employment with Interocean. On these voyages he earned the base wage of an able bodied seaman until he was promoted to mate, at which time his base wage increased to that of a mate. In addition to his base wage, Petersen accrued .35 day's pay under Interocean's compensation time program for each day he was at sea or in a foreign port (referred to as comp time earnings). Although Petersen was promoted to mate, Interocean continued to calculate his comp time earnings based on the pay of an able bodied seaman.

After Petersen returned from each of his three voyages, Interocean promptly paid him his base wage earnings. Unlike base wages, comp time was not paid in a lump sum after the ship's arrival in home port. Instead, Interocean paid Petersen and its other seamen comp time on a periodic basis while they were in home port between voyages.

After Petersen returned from his second voyage and while awaiting his third, he received in periodic payments the total of his accrued comp time earnings. Interocean alleges that it provided its seamen who, like Petersen, exhausted their comp time reserves, with three alternatives. First, the seamen could discontinue receiving comp time payments and await the next voyage. Second, they could earn pay by doing work on the docks for Interocean. Third, they could continue to draw comp time against their future comp time earnings.[2]

After Petersen exhausted his comp time reserves, he sought work from Interocean on the docks but found that no work was available. Petersen was not left without income, however, for Interocean provided him with periodic comp time advancements.

In total, Interocean advanced Petersen $2441 which it later deducted from the comp time pay he earned on the third voyage.

In Petersen's first wage claim he contended that Interocean withheld wages totalling $618 when it failed to increase his comp time pay commensurately with the base wage increase he received upon his promotion from able bodied seaman to mate. In his second wage claim, Petersen asserted that Interocean's advance of comp time pay and later deduction of that advancement violated 46 U.S.C. §§ 10313(f) and 10314. Finally, Petersen sought penalties for Interocean's withholding of his wages. 46 U.S.C. § 10313(g) provides for a penalty of two days pay for each day a seaman's wages are withheld without sufficient cause. The total penalty Petersen sought amounts to twice the wages he would have earned with Interocean since approximately July 31, 1984. The penalty continues to accrue until the wages are paid.

After Petersen filed his complaint, Interocean sent him a check for $618 on which was printed "wage dispute settlement—comp time differential claim." Petersen cashed the check.

On cross-motions for summary judgment, the trial court ruled that Petersen compromised his first wage claim by accepting the $618 payment. The court next dismissed Petersen's penalty claim. The trial court found that Interocean's withholding of Petersen's wages was with sufficient cause. The trial judge did, however, find that an issue of fact remained as to whether Interocean legally withheld the $2441 advanced to Petersen from the comp time pay he earned on his third voyage.

On appeal Petersen argues that the trial court erred in ruling that he compromised his first wage claim. Petersen also argues that Interocean withheld his comp time wages without sufficient cause under 46 U.S.C. § 10313 and that he is therefore

---

2. Interocean's written policies included only the first two alternatives. Petersen disputes whether Interocean's policies actually allowed for deductions of comp time advancements from future comp time earnings.

entitled to the two for one penalty under that statute.

Interocean challenges Petersen's arguments and, in addition, asserts as an affirmative defense that comp time earnings are not "wages" under 46 U.S.C. § 10313.[3] We find that comp time earnings are not wages and on this basis affirm the trial court's rulings.[4]

### Discussion

The origins of the seamen's wage statutes date back to 1790.[5] The purpose behind the statutes was to protect seamen from "arbitrary and unscrupulous" refusals of their employers to pay wages. *Collie v. Fergusson*, 281 U.S. 52, 55–56, 50 S.Ct. 189, 191, 74 L.Ed. 696 (1930). Requiring ship owners to promptly pay seamen their wages was intended to prevent the ship owners from using the threat of non-payment to force seamen to release the ship of all claims. *Ladzinski v. Sperling Steamship and Trading Corp.*, 300 F.Supp. 947, 954 (S.D.N.Y.1969). Prohibiting wage advancements to seamen was intended to stop similar practices. *Patterson v. Bark Eudora*, 190 U.S. 169, 175, 23 S.Ct. 821, 823, 47 L.Ed. 1002 (1903).

Today a seaman's compensation package is much broader than it was when the wage statutes were originally enacted. In addition to a base wage, seamen may receive various cash and non-cash benefits provided by the shipping articles, the collective bargaining agreement, and federal statutes. "It [is] not always ... easy for courts to determine which of the many payments that the owner or master of a vessel may make to a seaman should properly be classified as wages." *Merrick v.*

*Sea-Land Service Inc.*, 739 F.2d 126, 129 (3rd Cir.1984). In his treatise, *The Law of Seamen*, Martin Norris describes wages as the "compensation allowed to seamen for their services to the vessel, and they include not only base wages specified in the shipping articles, but also overtime, extra wages and bonuses." 1 M. Norris, *The Law of Seamen*, § 12:1 (4th ed. 1985 at 426). Courts generally subscribe to this definition. *See, e.g., Glandzis v. Callinicos*, 140 F.2d 111, 113–14 (2nd Cir.1944) (wages include bonuses for extrahazardous or war duty); *Monteiro v. Sociedad Maritima San Nicolas, S.A.*, 280 F.2d 568, 573 (2nd Cir.), *cert. denied*, 364 U.S. 915, 81 S.Ct. 272, 5 L.Ed.2d 228 (1960) (wages include overtime pay); *Williams v. Great Lakes Dredge & Dock Co.*, 726 F.2d 278, 281 (6th Cir.1984) (wages include completion bonus and travel allowance);[6] *Merrick v. Sea-Land Service, Inc.*, 739 F.2d 126, 129 (3d Cir.1984) (continuous wages, a form of contractual penalty, were not wages because they bore no relation to work performed).

Thus, to determine whether Interocean's comp time program should be classified as a wage the court must consider two questions: first, is comp time compensation for services rendered to the ship, and, second, does the comp time program permit practices that the seamen's wage statutes were intended to prevent. In making this determination, the wage statutes are to be liberally construed to maximize protection of seamen. *Arguelles v. U.S. Bulk Carriers, Inc.*, 408 F.2d 1065, 1070 (4th Cir.1969), *aff'd*, 400 U.S. 351, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971).

---

**3.** If comp time earnings are wages the entire program runs afoul of sections 10313 and 10314. If comp time is a wage, then the deferred payment plan and the deduction of advancements from future comp time earnings both violate section 10313(f). Petersen asserts that except for the deduction of advancements Interocean's comp time plan is in accord with the statutes.

**4.** Interocean, as "[t]he prevailing party may, of course, assert in [this court] any ground in support of [its] judgment, whether or not that ground was relied upon or even considered by

the trial court." *Dandridge v. Williams,* 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 1156 n. 6, 25 L.Ed.2d 491 (1970).

**5.** Act of July 20, 1790, 1 Stat. 133. *Alier v. Sea Land Service, Inc.,* 465 F.Supp. 1106 (D.C.P.R. 1979) provides a review of the statutory history of the Act.

**6.** The court considered the travel allowance "wages" because it was owed upon work completion regardless of actual travel expenditures.

Petersen contends that comp time compensates him for being on the ship after he has completed his eight hour shift. Interocean argues that comp time is a fringe benefit because comp time earnings accrue independently of earnings for a seaman's services rendered to the ship and are intended to provide seamen with income during slack periods. Under either Petersen's or Interocean's theory, comp time pay appears to be compensation for something other than services performed.

The comp time program also does not conflict with the purposes for which the wage statutes were enacted. The existence of the comp time program would not allow Interocean to put Petersen ashore without first paying him his base wages earned during the voyage. Interocean could recoup Petersen's advancements only from his future comp time earnings; Petersen's base wages were left untouched.

Because Interocean's comp time program does not compensate its seamen for services rendered and does not conflict with the purposes for which the wage statutes were enacted, comp time payments are not "wages" as used in 46 U.S.C. § 10313.[7] Therefore, the trial court's award of partial summary judgment in Interocean's favor is affirmed.

---

7. In actions brought by seamen seeking maintenance and cure, both the Fifth and Third Circuits have held that accumulated leave was wages. *Morel v. Sabine Towing & Transportation Co., Inc.,* 669 F.2d 345, 346 (5th Cir.1982); *Shaw v. Ohio River Co.,* 526 F.2d 193, 199 (3d Cir.1975). The vessel owners argued that accumulated leave satisfied their maintenance obligation. The courts rejected that argument, and found that accumulated leave was "deferred wages." *Morel,* 669 F.2d at 347; *Shaw,* 526 F.2d at 199. While at first glance, these cases appear to conflict with our holding, they are consistent with it. Neither court applied the wage statutes. If the wage statute had been applied, the "deferred wages" would have violated the statute. *See* 46 U.S.C. § 10313(f).