Kevin **LIPSCOMB**, Plaintiff–Appellee,

v.

**FOSS MARITIME COMPANY,**
Defendant–Appellant.

No. 95–35418.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 8, 1995.

Decided May 10, 1996.

David R. West, Garvey, Schubert & Barer, Seattle, Washington, for defendant-appellant.

Robert M. Kraft, Levinson, Friedman, Vhugen, Duggan & Bland, Seattle, Washington, for plaintiff-appellee.

Before: FLETCHER, KOZINSKI and LEAVY, Circuit Judges.

**FLETCHER, Circuit Judge:**

The shipowner Foss appeals the district court's grant of summary judgment in favor of the seaman Kevin Lipscomb. The appeal requires us to determine the proper method for determining a seaman's "unearned wages" for purposes of his entitlement under the general maritime law to maintenance, cure, and unearned wages when taken ill or injured in the service of a ship. We agree with the district court's conclusion that a seaman is entitled to the compensation he would have earned had he not been injured, to the extent such determination can be made without speculation. Because it is undisputed that the plaintiff, Kevin Lipscomb, would have earned an employment benefit called "accumulated time off" ("ATO") in the amount of $955.35 had he not been injured, in addition to his base wage rates, he was entitled to that amount as part of his unearned wages. Accordingly, we affirm the district court's judgment in favor of Lipscomb in the amount of $955.35.

## I.

The essential facts are undisputed. Lipscomb was employed by Foss on the tug JOHN BRIX during October 1993 as an able-bodied seaman. He was employed pursuant to the terms of a collective bargaining agreement ("CBA") between Foss and the Inlandboatmen's Union of the Pacific ("Union"). On or about October 15, 1993, Lipscomb was injured while in the service of the ship. Lipscomb was taken ashore for medical treatment. As a result of the injury, Foss paid Lipscomb a total of 15.5 days of unearned wages at his base wage rate of $89.62 per day, for a total payment of $1,389.11.

Lipscomb was not paid ATO as part of his unearned wages. Under the CBA, ATO is compensation earned, in addition to base wages, "[f]or each day worked and for each day a crew member is required to remain on board the vessel." Seamen in Lipscomb's class work eight hours per day for up to ninety days straight and then are off work for up to ninety days. They are paid a "base wage" for the time working aboard ship and also earn ATO. The base wages are paid immediately, whereas ATO is paid out during the time they are ashore. From the Union's point of view, "the purpose of ATO is to guarantee a seaman a paycheck between voyages and to guarantee that a seaman will have his health and welfare benefits paid during periods of unemployment."

The parties stipulated that *if* unearned wages include ATO, Lipscomb was entitled to an additional $955.35. The parties filed cross-motions for summary judgment. The district court granted Lipscomb's motion and denied Foss's motion. The court entered judgment in favor of Lipscomb in the amount of $955.35. We review de novo the district court's grant of summary judgment. *See Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

## II.

### A.

Foss first contends that the CBA limits seamen's compensation when ill or injured to the daily wage rates. We disagree. The CBA provides for ATO benefits when seamen are "working" or are "required to remain on board the vessel." Foss asserts that since Lipscomb met neither of these prerequisites, he is not entitled to ATO as unearned wages. This argument is without merit. The CBA also states that "the daily rates specified in Appendix D shall be paid for each day worked." As the district court noted, Foss's argument would serve to eliminate unearned wages altogether—something clearly not contemplated by the CBA or permitted under the general maritime law. Lipscomb is not suing for breach of the collective bargaining agreement; he is suing for a violation of the general maritime law right to maintenance, cure, and unearned wages. This right is imposed by law and cannot be abrogated by contract, *Cortes v. Baltimore Insular Line,* 287 U.S. 367, 371, 53 S.Ct. 173, 174, 77 L.Ed. 368 (1932), although the method for calculating the amount of maintenance, cure, and wages may be determined by the collective bargaining process, *Gardiner v. Sea–Land Serv., Inc.,*

786 F.2d 943, 949 (9th Cir.), *cert. denied,* 479 U.S. 924, 107 S.Ct. 331, 93 L.Ed.2d 303 (1986). Only if the collective bargaining agreement "express[ly]" provides for a different computation of maintenance, cure, and wages does it modify the general maritime law. *Id.* (CBA expressly stated that $8 per day would be provided as "maintenance" for an ill or injured seaman). The CBA between Foss and the Union does not discuss the amount to be provided an ill or injured seaman as "wages." Accordingly, it does not modify Lipscomb's entitlement to unearned wages under the general maritime law.

We turn, then, to the meaning of unearned wages under the general maritime law.

#### B.

■ Under the general maritime law, a seaman who falls ill or becomes injured while in the service of a ship is entitled to "maintenance and cure" by his employer. *Id.* at 945–46. This right includes (1) "maintenance"—a living allowance for food and lodging to the ill seaman; (2) "cure"—reimbursement for medical expenses; and (3) "unearned wages" from the onset of injury or illness until the end of the voyage.[1] *Id.* at 946. The purposes of this right, which dates back to the Middle Ages, *id.* at 945, are threefold: (1) to protect "poor and improvident" seamen; (2) to encourage shipowners to protect seamen's health and safety; and (3) to induce employment in the merchant marine. *Vella v. Ford Motor Co.,* 421 U.S. 1, 3–4, 95 S.Ct. 1381, 1382–83, 43 L.Ed.2d 682 (1975); *Gardiner,* 786 F.2d at 946.

■ The district court adopted a "but for" test for determining what elements of compensation are required to be paid as part of unearned wages: "ATO is a benefit that Lipscomb would have received *but for* his injury, and as such, ATO is recoverable as unearned wages." Although the Ninth Circuit has not directly addressed the issue, other courts have adopted "but for" tests and have concluded that "comp time," tips, "accumulated leave," and similar employment benefits constitute "unearned wages" for purposes of a seaman's entitlement to maintenance, cure, and wages. We agree, and conclude that ATO is part of Lipscomb's

unearned wages under the general maritime law.

In *Flores v. Carnival Cruise Lines,* 47 F.3d 1120 (11th Cir.1995), the Eleventh Circuit held that an injured cabin steward was entitled to not only his base wages but also the tips that "he would have earned had he not become disabled." *Id.* at 1123. The court reasoned that the right to maintenance, cure, and unearned wages is "one designed to put the sailor in the same position he would have been had he continued to work." *Id.* at 1127. Similarly, in *Lamont v. United States,* 613 F.Supp. 588 (S.D.N.Y.1985), the district court awarded an injured seaman full overtime wages, concluding that the seaman was "entitled to recover, in full, the compensation that he would have earned *but for* his illness or injury as such assessment can be made without speculation." *Id.* at 593 (emphasis added).

Moreover, "both the Fifth and Third Circuits have held that accumulated leave was wages." *Petersen v. Interocean Ships, Inc.,* 823 F.2d 334, 337 n. 7 (9th Cir.1987); *but cf.* 2 Martin J. Norris, *The Law of Seamen* § 26.7, at 16 n. 37 (4th ed. 1985) (wages are "[t]he base wages shown in the articles"). In *Shaw v. Ohio River Co.,* 526 F.2d 193, 199 (3d Cir.1975), the Third Circuit held that accumulated leave time (comparable to ATO) "is part of the seaman's wage agreement," and "a method of deferred wage payment." *Morel v. Sabine Towing & Trans. Co.,* 669 F.2d 345 (5th Cir.1982) adopted this reasoning:

> Accumulated leave time, paid vacation, is part of a seaman's total wages.... For all practical purposes, paid vacation is merely a method of deferring wage payments. Each day the seaman works he earns compensation payable in the form of a periodic wage payment, plus a paid leave entitlement. The paid leave time is a benefit which is directly attributable to the seaman's work on the vessel; it is an inherent part of the seaman's wages.

*Id.* at 346. In the same way, ATO is a benefit directly attributable to the seaman's work on the vessel and is an inherent part of his wage agreement. It is a way of deferring wages so that the seaman receives compensa-

---

1. The phrase "maintenance and cure" is often used as legal shorthand for the ill or injured seaman's right to maintenance, cure, and unearned wages. *See* Herbert T. Baer, *Admiralty Law of the Supreme Court* 6 (3d ed. 1979); *Flores*

*v. Carnival Cruise Lines,* 47 F.3d 1120, 1122–23 (11th Cir.1995). Our references to "maintenance and cure" are meant to encompass unearned wages.

tion during the time he is not on board ship.[2] Although Foss attempts to distinguish *Shaw* and *Morel* by noting that the cases merely held that accumulated leave time could not be credited towards "maintenance" payments, the express reason for the holdings was that accumulated leave time constituted "wages" under the general maritime law and thus needed to be paid in addition to, rather than as a substitute for, maintenance payments.[3]

*Petersen,* which held that "comp time" was not "wages" under the maritime penalty wage statutes, 46 U.S.C. §§ 10301–10321 & 10501–10509, is not to the contrary. In *Petersen,* the plaintiff seaman accrued a credit of .35 day's pay while working at sea for the defendant employer. This benefit was called "comp time," and is similar to ATO in the instant case. Accrued comp time credits were paid to the plaintiff on a periodic basis between voyages. The plaintiff claimed that this practice violated the maritime penalty wage statutes, which require seamen to be paid their "wages" within certain time periods, *id.* §§ 10313, 10504, and which forbid wage advances, *id.* §§ 10314, 10505. *Petersen* held that the penalty wage statutes were not violated, reasoning that "comp time earnings are not wages" because they are "compensation for something *other* than services performed." *Petersen,* 823 F.2d at 336–37. Although *Petersen*'s holding was in the context of the penalty wage statutes, Foss argues that the same reasoning applies here.

■ We disagree. *Petersen* is based on, and limited to, the penalty wage statutes, 46 U.S.C. § 10301–10321 & 10501–10509, a separate body of law. *Petersen* itself distinguished wages under the penalty wage statutes from wages under the general maritime law:

> In actions brought by seamen seeking maintenance and cure, both the Fifth and Third Circuits have held that accumulated

leave was wages. The vessel owners argued that accumulated leave satisfied their maintenance obligation. The courts rejected that argument, and found that accumulated leave was "deferred wages." *While at first glance, these cases appear to conflict with our holding, they are consistent with it. Neither court applied the penalty wage statutes. If the penalty wage statute had been applied, the "deferred wages" would have violated the statute.*

*Petersen,* 823 F.2d at 337 n. 7 (citations omitted and emphasis added). The purpose of the penalty wage statutes is to secure prompt payment of seamen's wages and thus "protect them from the harsh consequences of arbitrary and unscrupulous action of their employers." *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 572, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). The statute "obviously ... has no relation to [maintenance-wage-cure] wages which ... reflect the law's concern for the seaman becoming sick, disabled or ill in the service of the ship." *Isthmian Lines v. Haire,* 334 F.2d 521, 523 (5th Cir. 1964). The purposes behind the right to maintenance and cure are best served by paying an injured seaman the compensation he would have earned but for his injury. This method for determining wages is also consistent with the traditional breadth and nature of the remedy. *Flores,* 47 F.3d at 1123; *see also Vaughan v. Atkinson,* 369 U.S. 527, 532, 82 S.Ct. 997, 1000, 8 L.Ed.2d 88 (1962) ("[T]he shipowner's liability for maintenance and cure [i]s among the most pervasive of all and ... [is] not to be defeated by restrictive distinctions nor narrowly confined.") (internal quotations omitted); *Farrell v. United States,* 336 U.S. 511, 516, 69 S.Ct. 707, 709–10, 93 L.Ed. 850 (1949) ("It has been the merit of the seaman's right to maintenance and cure that it is so inclusive as to be relatively simple, and can be under-

---

**2.** Further indication that ATO is part of the wage agreement is reflected in the CBA: The CBA provides that employees may not work for any other employer in the industry while receiving ATO and may not qualify for unemployment compensation based on their failure to work on days covered by ATO.

**3.** The cases cited by Foss in which courts refused to order an employer to pay overtime or bonuses as unearned wages are readily distinguishable. In *Griffin v. Oceanic Contractors, Inc.,* 664 F.2d 36 (5th Cir.1981), *rev'd on other grounds,* 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982),

the court held that the district court did not err in failing to include overtime pay because "[t]he actual amount of overtime was uncertain, and hence any inclusion of such would have been purely speculative." *Id.* at 40. Similarly, in *Keefe v. American Pac. S.S. Co.,* 110 F.Supp. 853 (S.D.Cal.1953), the district court refused to award overtime because one could not know how much overtime a particular seaman would have earned but for his injury. By contrast, we know exactly how much ATO Lipscomb would have earned but for his injury—$955.35. No speculation is involved.

stood and administered without technical considerations.").

## III.

A seaman taken ill or injured in the service of his ship is entitled to the compensation he would have earned but for his illness or injury, to the extent such determination may be made without speculation. In this case, it is undisputed that plaintiff Lipscomb would have earned $1,389.11 in base wages plus $955.35 in accumulated time off had he not been injured. Accordingly, the district court properly concluded that Lipscomb was entitled to ATO as part of his unearned wages under the general maritime law.

AFFIRMED.