12-834
Padilla v. Maersk Lind, Limited

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

August Term, 2012

(Argued: April 4, 2013                                    Decided: June 25, 2013)

Docket No. 12-834-cv

_____

JOHN PADILLA,

*Plaintiff-Appellee*,

CHRISTOPHER B. CUPAN,

*Plaintiff,*

v.

MAERSK LINE, LIMITED,

*Defendant-Appellant.*

Before: B.D. PARKER, LOHIER, and CARNEY, *Circuit Judges*.

_____

Appeal from a judgment of the United States District Court for the Southern District of New York (Leisure, *J.*) in favor of a class of seafarers, discharged from service on Maersk ships due to illness or injury. Plaintiffs sought, as part of unearned wages, overtime pay that they would have earned from the time of their discharge until the end of their respective voyages. The district court ruled that the seafarers were entitled to such pay. We affirm.

**AFFIRMED.**

JOHN J. WALSH, Freehill, Hogan & Mahar, LLP, New York, NY, *for Defendant-Appellant*.

DENNIS M. O'BRYAN, O'Bryan Baun Karamanian, Birmingham, MI, *for Plaintiff-Appellee*.

BARRINGTON D. PARKER, *Circuit Judge*:

Defendant-Appellant Maersk Line, Limited ("Maersk") appeals from a judgment of the United States District Court for the Southern District of New York (Leisure, *J.*) granting summary judgment in favor of a class of seafarers, discharged from service on Maersk ships due to illness or injury. These seafarers sought, and the district court granted, as part of unearned wages, overtime pay that they would have earned from the time of their discharge until the end of their respective voyages. It is not disputed that seafarers on Maersk voyages regularly received substantial overtime payments. Indeed, by Maersk's own calculations, overtime payments regularly exceeded each class member's base wages. The principal issue on this appeal is whether unearned wages recoverable by ill or disabled seafarers under general maritime law include overtime pay that they would have earned had they completed their voyages.

On October 30, 2006, John Padilla began his contract as Chief Cook aboard a Maersk vessel, the MAERSK ARKANSAS. His voyage was scheduled to end on February 26, 2007. However, on Nov. 6, 2006, Padilla sustained an abdominal injury, was relieved of service at the Port of Salalah in Oman and discharged as unfit for duty. The Particulars of Engagement and Discharge indicated that, at the time of his discharge, Padilla was entitled to the balance of his earned wages, which included six days of regular pay plus thirty-four hours of overtime pay.

Maersk voluntarily paid Padilla unearned wages at his base pay rate, along with "maintenance and cure,"[1] for the duration of his contract, but declined to pay him overtime wages. In May 2007, Padilla sued on behalf of himself and a proposed class of similarly situated seafarers

---

[1]     "Maintenance" is the cost of lodging and food and "cure" is medical treatment.

seeking the overtime pay he would have earned on his voyage had he not been injured. As noted above, it is uncontested that prior to his injury, Padilla, like other class members, routinely earned substantial overtime in excess of 100% of base income.

The district court addressed the merits of Padilla's individual claim prior to considering class certification. Padilla moved for summary judgment, which the court granted in March 2009. Padilla contended that his entitlement to unearned wages was governed by general maritime law. Maersk did not seriously contest this proposition but argued that the collective bargaining agreement between Padilla's union and Maersk limited his recovery to unearned wages excluding overtime. The district court correctly concluded that the application of general maritime law could be limited, but not abrogated, in collective bargaining agreements. Turning to the Standard Freightship Agreement ("CBA"), the collective bargaining agreement between Padilla's union, Seafarers International Union, and Maersk, the district court concluded that the CBA did not address the inclusion of overtime pay in the calculation of Padilla's unearned wages. The court then held that unearned wages include overtime pay where the seafarer reasonably expected to earn overtime pay on a regular basis throughout his service in an amount that was not speculative and would have earned it "but for" an illness or injury. The district court found that Padilla satisfied this test and awarded him $13,478.40 in overtime pay.

The case was reassigned to Hon. Richard M. Berman, who, in October 2010, certified a class of seamen who suffered illness or injury while in service aboard Maersk ships and who, after discharge, were paid unearned wages, maintenance and cure until the end of their voyage, but were not paid overtime wages as part of unearned wages. After further proceedings, in January 2012, the court awarded damages to the class in the amount of $836,819.40. Following this award and after

3

Maersk filed an appeal in this court, Maersk sought to amend the judgment on two separate occasions. In July 2012, the court granted Maersk's first motion to amend to remove from the class two seamen who had filed separate suits. Shortly thereafter, but well after the end of the period allowed for filing a motion under Fed. R. Civ. P. 59(e), Maersk moved to amend the judgment again, this time to remove fifteen officers from the class. Maersk argued that the employment benefits of these officers were governed by a separate collective bargaining agreement, the American Maritime Officers Union Collective Bargaining Agreement ("AMOU CBA"), which expressly limited unearned pay to "benefits/wages only." The district court denied the motion finding that it was untimely, concerned with "wholly independent grounds" from those that led to the amended judgment and that Maersk failed to show "excusable neglect" for its delay in seeking the additional amendment.

On appeal, Maersk argues principally that the class is not entitled to overtime pay because overtime is not encompassed within the definition of "unearned wages" under general maritime law. Padilla argues that, given that overtime was a substantial and routine component of the seafarers' compensation, they were entitled to overtime payments because, under general maritime law, they must be placed in the same position they would have been in had they not been injured or disabled. We agree with Padilla.

We review *de novo* a district court's grant of summary judgment, construing the evidence in the light most favorable to the non-movant, asking whether there is a genuine dispute as to any material fact and whether the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir. 2003).

**DISCUSSION**

Under general maritime law, seamen who have become ill or injured while in a ship's service have the right to receive maintenance and cure from the owner of the vessel. *Ammar v. United States,* 342 F.3d 133, 142 (2d Cir. 2003). In addition, a seaman is entitled to recover unearned wages, the wages he would have earned if not for the injury or illness. *Rodriguez Alvarez v. Bahama Cruise Line, Inc.*, 898 F.2d 312, 315 (2d Cir. 1990) ("When a seaman is injured during his employment on a ship, the ship operator is liable not only for the seaman's maintenance and cure, but also for lost wages.") (citing *The Osceola*, 189 U.S. 158, 175 (1903)); *see also Griffin v. Oceanic Contractors, Inc.*, 664 F.2d 36, 39 (5th Cir. 1981) ("The right of an injured seaman to recover unearned maintenance-wages-cure (M-W-C) under the general maritime law of the United States until either (1) the end of the voyage or (2) the end of the contractual period of employment is well established.") (citing *The Osceola*, 189 U.S. at 175), *rev'd on other grounds,* 458 U.S. 564, 73 L. Ed. 2d 973, 102 S. Ct. 3245 (1982). While Padilla bears the burden of proving his right to maintenance and cure, claims for these are construed expansively and doubts regarding a shipowner's liability for maintenance and cure should be resolved in favor of the seamen. *Vaughan v. Atkinson*, 369 U.S. 527, 532 (1962); *Breese v. AWI, Inc.*, 823 F.2d 100, 104 (5th Cir. 1987).

As the district court correctly recognized, while the entitlement to unearned wages arises under general maritime law, rates for unearned wages may be defined and modified in collective bargaining agreements, *see Ammar*, 342 F.3d at 146-47, and Maersk contends that the CBA should control our interpretation of the unearned wages issue. The CBA at issue here was between large parties well-equipped to represent and protect their respective interests. Under these circumstances, the appropriate accommodation between federal maritime law and federal common law for the

5

enforcement of collective bargaining agreements is to allow unionized seamen to bargain for the rights and privileges they prefer in exchange for limitations on various components of compensation so long as the negotiations are legitimate and the seamen's interests are adequately protected. *Id.* In light of these considerations, our responsibility is to determine the actual terms agreed to by the parties to the CBA and not to impose a limitation where none was intended or agreed to. *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 131 (2d Cir. 2005). Consequently, as the Ninth Circuit held in *Lipscomb v. Foss Mar. Co.*, 83 F.3d 1106, 1109 (9th Cir. 1996), only if the CBA expressly provides for a different computation of the seafarers' remedies does it modify the general maritime law. Here, however, the CBA does not limit the availability of unearned wages and so we must apply general maritime law.

Because much of Padilla's income was derived from overtime compensation, the district court awarded him overtime pay as part of his unearned wages, reasoning that Padilla was entitled to recover in full the compensation that he would have earned "but for" his injury. We agree with this approach. The record reflects that it was the custom and practice for seafarers working for Maersk to derive substantial income from overtime compensation and that, consequently, such compensation was a common expectation of both the seamen and of Maersk. As noted, Padilla and other Maersk seafarers regularly earned 100% or more of their base pay in overtime wages. Significantly, the district court concluded that the calculation of the overtime Padilla would have worked was not speculative. *Cf. Griffin*, 664 F.2d at 40 (upholding the district court's decision to deny overtime because "[t]he actual amount of overtime was uncertain, and hence any inclusion of such would have been purely speculative"). In fact, the calculations of the overtime pay due to the class were essentially undisputed: a Maersk manager easily calculated each seaman's expectation of

his overtime from records of past work for Maersk. Thus we agree that the district court correctly applied the "but for" test.[2]

In reaching this conclusion, we align ourselves with the other circuits who apply the same test. *See Flores v. Carnival Cruise Lines*, 47 F.3d 1120, 1122-24 (11th Cir. 1995) (holding that tips should be included in the measure of unearned wages because a seaman would have earned them but for his injury); *Lipscomb*, 83 F.3d at 1109 (concluding that accumulated time off is part of seaman's unearned wages under general maritime law); *Aksoy v. Apollo Ship Chandlers, Inc.*, 137 F.3d 1304, 1306 (11th Cir. 1998) (calculating unearned wages as average tip income plus guaranteed minimum wage); *Morel v. Sabine Towing & Transp. Co.*, 669 F.2d 345, 346 (5th Cir. 1982) (holding that accumulated leave time is part of total wages and payable in addition to maintenance); *Shaw v. Ohio River Co.*, 526 F.2d 193, 199 (3d Cir. 1975) (same).

## II.

Maersk also appeals the district court's decision denying its motion to amend the amended judgment under Rule 59(e) by removing the fifteen officers whose employment was governed by the AMOU CBA. The district court denied the motion because it was six months late, because it concerned "wholly independent grounds" from those that gave rise to a previously amended judgment and because Maersk's explanation that it "overlooked" the AMOU CBA did not constitute excusable neglect. On appeal, Maersk argues that the decision to amend the judgment on

---

[2] Maersk also argues that by including overtime pay in "unearned wages" the district court expanded maritime remedies beyond those in the Jones Act, 46 U.S.C. § 30104, which permits the recovery of overtime only upon proof of negligence and a causal connection between the negligence and unseaworthiness and injury. According to Maersk, "a cause of action that existed before the Jones Act (unearned wages) survived the Jones Act, but damages permitted by the Jones Act (overtime wages) must be limited by the conditions in the Act." Appellant's Brief at 29. These arguments were not raised before the district court, and we decline to consider them here. *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994) ("Entertaining issues raised for the first time on appeal is discretionary with the panel hearing the appeal.").

this substantive issue could have been made conveniently and without waste of judicial resources.

Maersk also argues that "class actions by their nature should be treated differently under Rule 59 . . . [because] subclasses may emerge unexpectedly" and "may have to be decertified in light of the proceedings." Appellant's Brief at 38.

Maersk's arguments are unavailing. We review the denial of a motion to amend the judgment under Rule 59(e) for abuse of discretion. *See Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 150 (2d Cir. 2008). "A court abuses its discretion when (1) its decision rests on an error of law or a clearly erroneous factual finding; or (2) cannot be found within a range of permissible decisions." *Johnson ex rel. United States v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 125 (2d Cir. 2011). A motion to alter or amend a judgment under this rule must be filed no later than 28 days after the entry of judgment. Fed. R. Civ. P. 59(e). Because Maersk did not meet this time limitation, its motion is considered under Rule 60(b) and Maersk must demonstrate "excusable neglect." *See Stevens v. Miller*, 676 F.3d 62, 67-68 (2d Cir. 2012); *Lora v. O'Heaney*, 602 F.3d 106, 111 (2d Cir. 2010). When assessing claims of "excusable neglect" we look to the following so-called *Pioneer* factors : "(1) the danger of prejudice to the [non-movant], (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)) (quotation marks and brackets in original omitted).

Our Circuit focuses closely on the third *Pioneer* factor: the reason for the delay, including whether it was within the reasonable control of the movant. *Id.* The district court concluded that

8

Maersk did not offer a valid reason for its delay since Maersk stated only that its argument pertaining to the officers had been "overlooked" during the two-year period following class certification. Maersk offered no explanation as to why it did not raise the point that the officers were not entitled to overtime two months earlier when it made its first motion to amend the judgment to remove other plaintiffs. Because a delay attributable solely to a defendant's failure to act with diligence cannot "be characterized as 'excusable neglect'," we see no abuse of discretion by the district court in denying the motion. *Dominguez v. United States*, 583 F.2d 615, 617 (2d Cir. 1978).

**CONCLUSION**

For the foregoing reasons, we **affirm** the judgment of the district court.